CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 07 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BETSY ACKERSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:17cv00011 |
| ) | |
| v.   ) | **MEMORANDUM OPINION** |
| ) | |
| THE RECTOR AND VISITORS OF ) | By: Hon. Glen E. Conrad |
| THE UNIVERSITY OF VIRGINIA, ) | United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff Betsy Ackerson brought this action against defendant the Rector and Visitors of the University of Virginia ("the University") for unequal pay, disparate treatment based on sex, sex discrimination, and retaliation for her complaints about unequal pay and poor accommodations for her medical condition. The case is presently before the court on defendant's partial motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. For the reasons stated below, the motion will be denied.

## Background

In December 2012, the University hired Ackerson as a Project Manager for Strategic Planning for one year. Am. Compl. ¶¶ 29-30. In December 2013, the University sent Ackerson a letter notifying her that the University had extended her appointment by one year until December 24, 2014. Dec. 6, 2013 Extension Letter, Docket No. 16-1; Am. Compl. ¶¶ 63, 68-69. On December 22, 2014 and December 22, 2015, the University again extended Ackerson's contract for one year until December 24, 2015 and December 24, 2016, respectively. Dec. 22, 2014 Extension Letter, Docket No. 16-2; Dec. 22, 2015 Extension Letter, Docket No. 16-3.

Before the latter extension expired, in April 2016, Ackerson received a letter explaining that the University had reassigned her to the position of Assistant Vice Provost. April 11, 2016 Extension Letter, Docket No. 16-4. The letter stated that "[t]his position is limited in term and concludes December 24, 2017." Id.

In June 2016, Ackerson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for sex and disability-based discrimination and retaliation. Charge of Discrimination, Docket No. 14 Ex. B. In the charge, Ackerson alleged that the University had retaliated against her for exercising her rights under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), and the Rehabilitation Act, 29 U.S.C. § 794, et seq. Ackerson received her EEOC Notice of Right to Sue on January 12, 2017, Am. Compl. ¶ 9, and filed her original complaint on February 15, 2017.

On June 2, 2017, the University sent Ackerson a letter that stated, in pertinent part:

> [Y]our limited-term appointment with the University is set to expire by its own terms on December 24, 2017. As was stated in the e-mail to your counsel on May 24, 2017, that date is consistent with the continued and rapid completion of nearly all of your responsibilities. . . . In light of the foregoing, this confirms that your current appointment with the University will end on December 24, 2017 and will not be renewed.

Id. ¶¶ 145-47; June 2, 2017 Notice of Non-reappointment, Docket No. 14 Ex. A.

Ackerson then filed an amended complaint, in which she pleads that "UVA retaliated against Ackerson in June 2017 when it stripped Ackerson of duties and notified Ackerson that it would not renew her contract in December 2017, thereby terminating Ackerson's employment effective December 2017." Am. Compl. ¶ 185 (retaliation under the EPA); see id. ¶ 217 (retaliation under the Rehabilitation Act). The same allegation forms the basis of plaintiff's new Count V for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Id. ¶¶ 201-03.

2

The defendant has moved to dismiss Count V and the other paragraphs in the amended complaint containing similar allegations for lack of subject matter jurisdiction. The defendant contends that Ackerson has failed to exhaust the retaliation claims made in those portions of the amended complaint and thus that the plaintiff has not satisfied the prerequisite for federal court jurisdiction in this matter.

The parties did not request a hearing on the motion. The matter has now been fully briefed and is ripe for review.

## Standard of Review

Rule 12(b)(1) provides for the dismissal of claims over which the court lacks subject matter jurisdiction. Where, "as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." U.S. ex rel Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In reviewing such a challenge, a court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004).

## Discussion

A plaintiff's failure to file a charge with the EEOC and to exhaust her administrative remedies under Title VII before filing a Title VII claim in federal court deprives the court of subject matter jurisdiction over the claim.* Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th

---

* Defendant also moves to dismiss certain allegations of retaliation under plaintiff's EPA and Rehabilitation Act claims, but it is not clear that those claims are subject to the exhaustion requirement upon which the defendant relies. The EPA does not require the plaintiff to exhaust administrative remedies before bringing a claim under the EPA in federal court. See County of Washington v. Gunter, 452 U.S. 161, 175 n.14 (1981). Similarly, the plaintiff may not be subject to an exhaustion requirement for her claim under the Rehabilitation Act. See Ott v. Maryland Dep't of Pub. Safety & Corr. Servs., No. CV RDB-16-3394, 2017 WL 3608181, at *5 (D. Md. Aug. 22, 2017) ("For claims brought pursuant to § 504 of the Rehabilitation Act [29 U.S.C. § 794(a)], a plaintiff is not required to exhaust administrative remedies.") (alterations and internal quotation marks omitted)). But see Spencer v. Ashcroft, 147 F. App'x 373, 375 (4th Cir. 2005) ("The Rehabilitation Act expressly incorporates the standards of the Americans with

Cir. 2009); Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). A plaintiff's EEOC charge defines the scope of her right to sue in federal court. Jones, 551 F.3d at 300. "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Id. (internal quotation marks omitted).

However, the Fourth Circuit has recognized an exception to the exhaustion requirement for certain retaliation claims: a plaintiff may raise for the first time in federal court the claim that her employer retaliated against her for filing an EEOC charge. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992). This exception is "the inevitable corollary of [the Fourth Circuit's] generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC]." Id. (internal quotation marks omitted). This rule does not apply in cases in which a plaintiff could have alleged retaliation in the initial charge to the EEOC, but did not do so. Cumberlander v. KCL Site Servs., LLC, Civil Action No. 08–994, 2009 WL 4927144, at *3 (E.D. Va. Dec. 17, 2009).

The parties dispute whether this case falls within the ambit of Nealon or Cumberlander. The defendant argues that this case resembles Cumberlander because the relevant adverse employment event occurred in April 2016 when the University notified plaintiff her contract would expire on December 24, 2017. The defendant characterizes the June 2017 letter as a mere reminder of the University's decision to terminate the plaintiff's employment in December 2017. At most, according to the defendant, the nonrenewal of plaintiff's contract was a mere consequence of the University's prior decision to terminate her employment effective December

---

Disabilities Act (ADA). The ADA, in turn, follows the powers, remedies and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended. Thus, like a Title VII plaintiff, Spencer was required to exhaust her administrative remedies before instituting a lawsuit.") (internal citations and quotation marks omitted)).

4

24, 2017. See Def.'s Br. 4 (citing Delaware State College v. Ricks, 449 U.S. 250 (1980), and Chardon v. Fernandez, 454 U.S. 6 (1981), which generally hold that the statute of limitations begins to run when an adverse employment event, such as notice of a future termination, occurs, not when the employment terminates or another consequence of the adverse event occurs). Plaintiff, however, argues that the relevant adverse employment event was the June 2017 letter, which, because it occurred after she filed her charge and complaint, resembles the event in Nealon and provides a basis for the new allegations of retaliation in her amended complaint without requiring a second EEOC charge. Thus, this dispute boils down to whether the June 2017 letter was merely a reminder of an earlier adverse employment event or the disputed employment event itself.

The court believes that the June 2017 letter was the latter. Because the University had previously set term limits when extending plaintiff's employment without ever enforcing those limits, the court believes that the April 2016 letter did not conclusively establish that the plaintiff's employment would be terminated in December 2017. Rather, the April 2016 letter left open the possibility that plaintiff's employment could be extended as all of plaintiff's prior terms of employment had been. The June 2017 letter informed the plaintiff for the first time that her contract would not be renewed. Courts have recognized that "where an employee seeks renewal of an employment contract, non-renewal of an employment contract constitutes an adverse employment action for purposes of Title VII . . . ." See Leibowitz v. Cornell Univ., 584 F.3d 487, 501 (2d Cir. 2009) (collecting cases from other circuits explicitly and implicitly holding the same). Thus, the court finds that this case resembles the class of cases identified in Nealon.

Because the June 2017 letter issued after the plaintiff filed her EEOC charge, the plaintiff's retaliation claims based on the letter need not be administratively exhausted so long as

the plaintiff alleges that the nonrenewal of her contract occurred as result of her filing the EEOC charge. It appears to the court that the plaintiff has done so. Because an act made by an employer in retaliation for the filing of an EEOC charge is reasonably related to that charge, no additional charge is required. Jones, 551 F.3d at 304 (recognizing that where Nealon applies, it "certainly tells us that [the plaintiff's] retaliation claim relates back to the first EEOC charge"). Thus, the plaintiff did not need to exhaust administrative remedies to invoke federal court jurisdiction over her claims of retaliation based on the June 2017 letter.

Accordingly, the court finds that it has subject matter jurisdiction over the portions of plaintiff's amended complaint alleging retaliation based on the nonrenewal of her contract in June 2017.

## Conclusion

For the reasons stated, the court will deny the defendant's partial motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 7th day of November, 2017.

_____
United States District Judge