CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 22, 2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BETSY ACKERSON,

            *Plaintiff*,

v.

THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA,

            *Defendant*.

CASE NO. 3:17-CV-00011

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

     Plaintiff Betsy Ackerson ("Plaintiff") has filed objections to U.S. Magistrate Judge Joel C. Hoppe's Report and Recommendation ("R&R"). (Dkt. 62). The R&R addresses Plaintiff's motion for sanctions against Defendant, the Rectors and Visitors of the University of Virginia ("Defendant" or "University"). (Dkt. 30). Plaintiff alleges Defendant failed to preserve notebooks that could have contained evidence relevant to her claims. As a sanction, Plaintiff requests that there be an adverse inference instruction at trial. The R&R advises this Court to deny Plaintiff's motion for sanctions because there is no concrete evidence the notebooks contained evidence relevant to Plaintiff's claims. (R&R 1). After undertaking review of the R&R and objections, *see* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006), I will overrule Plaintiff's objections, adopt the R&R in full, and deny Plaintiff's motion for sanctions.

**I. Standard of Review**

     Under Federal Rule of Civil Procedure 72(a), district judges are required to consider timely objections to non-dispositive decisions by magistrate judges and modify or set aside any part of the decision that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). A ruling

-1-

is "clearly erroneous" only when the totality of the record leaves the Court with the "definite and firm impression" that a mistake has been made. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). It is "'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bowers v. Univ. of Virginia*, No. 3:06CV00041, 2008 WL 2346033, at *3 (W.D. Va. June 6, 2008). It is the objecting party's burden to show that a ruling is clearly erroneous or contrary to law. *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D. N.J. 2008). "In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions . . . ." 12 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3069 (2d ed.).

## II. Factual Background

The basic facts of this matter are undisputed. In December 2012, Plaintiff was hired by Defendant for a one-year term to administer the University's strategic plan, dubbed "the Cornerstone Plan." (R&R 2). The development and implementation of this plan ultimately took several years to complete, and Plaintiff's employment was renewed several times. While employed by the University, Plaintiff had weekly meetings with her supervisor, Senior Vice Provost J. Milton Adams ("Adams"), to discuss the progress Plaintiff was making on the strategic plan. (*Id.* at 6). During these meetings, which mainly covered "to-do" or "action" items, Adams would write down those items and related notes in a notebook. *Id.* Throughout her time at the University, Plaintiff made multiple comments and complaints to administrators regarding her salary and title.

In late 2015, the tension regarding Plaintiff's salary and position came to a head when her attorney contacted the Defendant's Office of University Counsel. Plaintiff's attorney raised the issue of Plaintiff's gender in regards to an alleged disparity in pay. (*Id.* at 3–4). Shortly thereafter

Plaintiff was given a pay raise and a new title, Assistant Vice Provost. *Id.* Notwithstanding this raise and promotion, Plaintiff continued to lodge complaints about her salary.

In anticipation of potential litigation, Defendant's in-house counsel then issued a comprehensive "litigation hold" notice to staff regarding Plaintiff. (Dkt. 33 at ECF 2). The hold directed employees, including Adams, to locate and preserve documents, including any handwritten materials, containing information "related directly or indirectly" to Plaintiff's allegations that she "had been paid less than similarly situated" male colleagues and had been "retaliated against for taking medical leave." (*Id.* at ECF 2–3). Notwithstanding this litigation hold, Adams discarded the notebooks containing the information he wrote down during his weekly meetings with Plaintiff. (R&R 5).

In June 2016, Plaintiff filed an EEOC charge claiming discrimination based on sex and disability, as well as retaliation for exercising her rights under the Equal Pay Act and the Rehabilitation Act. *Id.* In early 2017, Plaintiff then brought the instant suit against Defendant, alleging she was subjected to various forms of employment discrimination under several federal statutes (the Equal Pay Act, Title VII, Title IX, and the Rehabilitation Act).[1] (Dkt. 1). During discovery Plaintiff requested Defendant produce "[a]ny documents relating to any complaints made by Ackerson (either verbally or in writing) regarding Ackerson's position classification or salary," including "any notes, minutes, or memorializations of any meetings regarding such complaints." (Dkt. 31-8 at ECF 3).

After discovering the fate of Adams's notebooks, Plaintiff moved for sanctions, contending the notebooks may have contained relevant information that supported her claims. (Dkt. 30).

---

[1] After the University informed Plaintiff her position would not be renewed, Plaintiff amended her complaint alleging additional claims for retaliation. (Dkt. 12).

## III. Factual Objections

Plaintiff lodges numerous factual objections to the R&R. (Dkt. 62 at ECF 2–8). The R&R is comprised of two facts sections entitled "Background," (R&R 1–5), and "Facts," (*Id.* at 5–11). Plaintiff mainly takes issue with how several facts are characterized. However, these factual findings are not "clearly erroneous," are largely irrelevant to the instant issue of spoliation, and thus will be overruled.

### A. Objections to the "Background" Section

To begin, the Court will not accept new evidence by Plaintiff in conjunction with her objections to the R&R. "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010); *see also Virgin Enters. Ltd. v. Virgin Cuts, Inc.*, 149 F. Supp. 2d 220, 223 (E.D. Va. 2000). Moreover, "[p]arties must take before the magistrate, not only their best shot but all of their shots." *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987); *Frank Martin Sons, Inc. v. John Deere Const. & Forestry Co.*, 542 F. Supp. 2d 101, 107 (D. Me. 2008) (rejecting a declaration containing new evidence submitted with objections to an R&R).

Here, Plaintiff attempts to introduce an affidavit with additional facts in order to quibble with Judge Hoppe's factual findings. While the Court has discretion to hear this evidence, I find its admission would be inappropriate at this juncture. Plaintiff's affidavit does not contain any information new to the Plaintiff. That is to say, Plaintiff's failure to present this known evidence to Judge Hoppe is the precise type of disfavored evidence the courts in *Caldwell* and *Borden* found improper. As such, I will overrule Plaintiff's objections, found in Parts I.B.ii–iii and I.B.v–vi of her brief, that rely on this additional evidence.

Next, Plaintiff raises several sundry objections to the R&R's "Background" section.

Notably, many of these objections regard facts that have very little relevance to Plaintiff's weekly meetings with Adams or the contents of his notebooks from those meetings. First, Plaintiff argues the R&R's "narrative" recounting the first instance Adams told Plaintiff to start looking for a new job is inaccurate. (Dkt. 61 at ECF 2). Plaintiff contends this first occurred in March 2013. However, Judge Hoppe's stated that Plaintiff was told to start looking for a new job "around the same time" the University hired a writer to draft the strategic plan: in March 2013. *Id.* This is not a clearly erroneous factual finding.

Second, Plaintiff contends the R&R misrepresented who was present at a May 2013 meeting (not one of Plaintiff's weekly meetings with Adams) where she was told to start looking for a new job. (Dkt. 62 at ECF 3). Her objection implies that Judge Hoppe failed to note, aside from Adams, the presence of other administrative officials who were present (such as President Sullivan and the President's Chief of Staff Nancy Rivers). Yet, Judge Hoppe stated the "May 2013 meeting [was] with other officials in the Provost Office." (R&R 2). These "other officials" would include individuals such as Rivers. Again, this is not a clearly erroneous factual finding.

Third, Plaintiff objects that the R&R failed to mention Plaintiff's other prior meetings, separate from the weekly meetings with Adams, between Plaintiff and both Adams and Rivers regarding her salary. However, Judge Hoppe clearly communicated Plaintiff had raised "concerns that her salary was too low," and that she "continued to press concerns about her low salary with Adams and other University officials." (*Id.* at ECF 3). These comments demonstrate that Plaintiff had previously raised the issue with administrators. This is simply not an omission.

Fourth, Plaintiff argues that the R&R failed to include the events leading up to a discussion with Adams, wherein Plaintiff told him that she would seek out a meeting with President Sullivan to resolve her compensation and title issue. Yet, the R&R recounts in the lead

up to the discussion with Adams that Plaintiff "grew frustrated by [his] 'repeated delays' in addressing her concerns . . . ." *Id.* This clearly shows, contrary to Plaintiff's insinuation about Judge Hoppe's factual finding, that Plaintiff's request for a meeting did not arise out of the blue. Again, this is not an omission.

Fifth, Plaintiff objects to the R&R to the extent it fails to note the October 2015 letter from her counsel to the University referenced concerns under the Rehabilitation Act.[2] (Dkt. 62 at ECF 3). However, Judge Hoppe stated elsewhere in his R&R that the October 2015 "letter memorialized a conversation between Ackerson's attorney and an attorney for the University and described Ackerson's potential claims against UVA under the Equal Pay Act and the Rehabilitation Act." (R&R 4). This is not a clearly erroneous finding of fact.

Sixth and relatedly, Plaintiff splits hairs regarding the R&R's phrasing of Plaintiff's request for a private office. Plaintiff contends that she did not "request a private office," but asked for her private office to be returned to her. (Dkt. 62 at ECF 4). Simply stated, Plaintiff had a private office, while on leave it was given to another employee due to space issues, once she returned she requested a private office again. Judge Hoppe made no mistake in his recitation of Plaintiff's request. Again, this is not a clearly erroneous finding of fact.

**B.     Objections to the "Facts" Section**

Plaintiff makes several objections to the R&R's "Facts" section as well. (Dkt. 62 at ECF 4–8). Having already overruled several of these objections, based on Plaintiff's attempt to utilize additional evidence not provided to Judge Hoppe, only three remain.

---

[2]     Plaintiff makes reference to an "October 2016" letter in her objections, and cites page 3 of the R&R and paragraph 121 of her amended complaint. However, his appears to be a typo, as both the R&R and the amended complaint refer only to an October 2015 letter between Plaintiff's counsel and Defendant. (R&R 3; Dkt. 12 at ¶ 121). Accordingly, I construe Plaintiff's objection as applying to the facts surrounding the October 2015 letter.

First, Plaintiff objects to the R&R's statement that Plaintiff and Adams recalled their weekly meetings in "much the same way." (R&R 6). The R&R utilized testimony from the Plaintiff to describe the general contours of the weekly meetings between Plaintiff and Adams. Before a large block quote from Plaintiff's testimony describing the weekly meetings, Judge Hoppe stated "Ackerson remembered her weekly meetings with Adams in much the same way . . . ." (Dkt. 61 at ECF 6). Here, Plaintiff seeks to put dispositive weight on a broad introductory sentence to a large excerpt of Plaintiff's deposition. The R&R is simply stating that Plaintiff and Adams remembered the meetings—not identically—but similarly to be about following up on completed tasks. Accordingly, this statement is not clearly erroneous.

Plaintiff's final two objections (iv and vii) allege essentially the same factual omission by Judge Hoppe. The omission being that Judge Hoppe failed to mention Plaintiff's previous discussions with the University regarding her alleged inequitable salary. Plaintiff contends that these discussions happened during Plaintiff's weekly meetings with Adams and in meetings with other administrators (*e.g.,* Rivers and Provost John Simon). First, as to meetings with other administrators in general, Judge Hoppe stated precisely what Plaintiff claims was omitted: that Plaintiff had raised the issue of her salary to Adams, Rivers, and Simon in the past. (R&R 8). Second, as to Plaintiff's weekly meetings with Adams specifically, Judge Hoppe stated elsewhere in his findings that the issue of Plaintiff's salary was brought up in prior conversations with Adams and other University officials—but that there is no evidence that these conversations took place during those weekly meetings. *Id.* Plaintiff can point to nothing in the record that was before Judge Hoppe to argue otherwise. In sum, Plaintiff does not reveal any clearly erroneous factual findings in the R&R.

## IV. Legal Objections

Plaintiff makes two legal objections to the R&R. First, Plaintiff objects to Judge Hoppe's conclusion that any spoliation was the product of Adams's negligence. Instead, Plaintiff asserts Adams acted with a heightened level of culpability, such as willfully or in bad faith. Second and relatedly, Plaintiff objects to Judge Hoppe's conclusion that Plaintiff failed to prove the destroyed notebooks were relevant to her claims. Because I find Judge Hoppe's conclusions do not misinterpret or misapply applicable law, I will overrule Plaintiff's objections.

### A. Level of Culpability

In order to grant Plaintiff's motion for sanctions, Plaintiff must establish three elements to show spoliation occurred:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Walker v. Owens*, No. 7:13cv425, 2016 WL 320998, at *2 n.3 (W.D. Va. Jan. 26, 2016) (alteration in original) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)). "[A]ny level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence" satisfies the second element, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011), whereas "the nuanced, fact-specific differences among these states of mind become significant in determining" any appropriate remedy or sanction for spoliation. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010).

Notwithstanding the fact that Judge Hoppe found in Plaintiff's favor on the second element,[3] Plaintiff objects to Judge Hoppe's analysis and asks the Court "to find bad faith, or at a minimum, willfulness." (Dkt. 62 at ECF 12). A finding of bad faith or willfulness would also undermine Judge Hoppe's conclusion that the destroyed evidence was not relevant under the third element. *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("A failure to preserve documents in bad faith, such as intentional or willful conduct, alone establishes that the destroyed documents were relevant."). Contrary to Plaintiff's contention however, Judge Hoppe thoroughly explained why a finding of bad faith or willfulness was inappropriate under the correct law as applied to the facts.[4] (R&R 17–19). *See also Powell*, 591 F. Supp. 2d at 821 (referencing negligence under the sanctions standard, and providing the following hypothetical: "such as the result of failure by an employee to follow instructions not to destroy [evidence] . . . .").

Plaintiff has failed to point to any evidence that warrants a finding of even willful conduct by Adams. "Willfulness is equivalent to intentional, purposeful, or deliberate conduct." *Victor Stanley, Inc.*, 269 F.R.D. at 530 (citing *Buckley v. Mukasey,* 538 F.3d 306, 323 (4th Cir. 2008)). For a defendant's conduct to be willful, he must have known "the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). Plaintiff argues Adams's "decision to intentionally destroy the notebooks, especially only one month after acknowledging receipt of a *second*

---

[3] Judge Hoppe concluded that Adams "was, *at a minimum*, negligent," and "perhaps even grossly negligent." (R&R 20, 22 (emphasis added)).

[4] Indeed, Plaintiff cites extensively to Judge Hoppe's R&R for the applicable law on this issue. To the extent that Plaintiff contends the facts should be different, this Court has already found those objections to be without merit. *See* Part III *supra*.

litigation hold notice, demonstrates a blatant disregard for the law and the serious nature of Ackerson's allegations." (Dkt. 62 at ECF 11 (emphasis in original)).

Yet, Plaintiff has provided no evidence, before Judge Hoppe or now, that Adams knew *at the time he discarded the notebooks*—not that there was ongoing litigation—but that the notebooks contained relevant evidence of Plaintiff's claims. To the contrary, the uncontroverted evidence is that Adams did not remember Plaintiff complaining in the weekly "to-do" meetings about anything relevant to her instant claims. (R&R 20). Given that he could not remember any such relevant information being recorded, it could not be said that Adams was working to intentionally deprive Plaintiff of any evidence when he discarded the notebooks. *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008) (requiring knowledge of relevancy at the time the evidence is destroyed). Accordingly, a finding of willfulness is inappropriate, and Judge Hoppe's conclusion is not contrary to law.

**B.      Relevancy Determination**

Lastly, Judge Hoppe concluded Plaintiff failed to show, by a preponderance of the evidence, the destroyed notebooks were relevant to her claims. *See Walker,* 2016 WL 320998, at *2 n.3. Plaintiff objects, and contends the notebooks did, indeed, contain relevant information to her claims. The relevancy inquiry is "a two-pronged finding of relevance and prejudice." *Victor Stanley, Inc.*, 269 F.R.D. at 531. "The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause." *Sampson*, 251 F.R.D. at 180 (quotations omitted) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996)). Further, Plaintiff's "burden must be met by offering probative evidence, not

the hyperbole of argument." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 498 (E.D. Va. 2011).

Plaintiff cannot point to any concrete, probative evidence—only her speculation—that Adams's notebooks contained relevant information to her claims. Tellingly, in addition to the lack of probative evidence demonstrating relevancy, Plaintiff took literally hundreds of pages of notes from her weekly meetings with Adams (which she has kept), none of which denote discussions germane to her instant claims. (Dkt 69-1 at ECF 3). Plaintiff's speculative assertion, that there *could* be evidence in the notebooks, does not rise to the level of concrete, probative evidence of relevance sufficient to warrant sanctions. Plaintiff's arguments to the contrary are simply not supported by law. *Compare* (Dkt. 62 at ECF 16 ("The fact that Ackerson (or Adams for that matter) cannot pinpoint with certainty what the notes said does not render them irrelevant.")) *with E.I. du Pont de Nemours & Co.*, 803 F. Supp. 2d at 498 (requiring "probative evidence" to meet the burden of relevancy, "not the hyperbole of argument").

Further, Plaintiff attempts to draw the Court's attention to statements made by Adams, omitted by Judge Hoppe, that the weekly meetings could have included conversations of Plaintiff's medical leave. Thus, Plaintiff argues, Adams's notes could have included information relevant to her claims under the Rehabilitation Act—making the notebooks relevant. In essence, Plaintiff argues Judge Hoppe's "factual misinterpretation leads to this legal error." (Dkt. 62 at ECF 13). Yet these arguments are nothing more than Plaintiff's attempt to repackage her factual objections as legal ones in hopes of producing a different result. The hypothetical possibility proposed by Plaintiff does not alter the concrete facts that: (1) the weekly meetings were set up mainly to cover "to-do" items; and (2) Adams did not remember Plaintiff complaining about any

issues relevant to her claims in the meetings. Without concrete, probative evidence to the contrary, Plaintiff's motion must be denied.

## V. Conclusion

In sum, Plaintiff has failed to raise any objection that demonstrates Judge Hoppe's factual findings or legal conclusions are "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Accordingly, Plaintiff's objections will be overruled and I will adopt Judge Hoppe's R&R in full. (Dkt. 61). Therefore, Plaintiff's motion for sanctions for spoliation of evidence will be denied. (Dkt. 30).

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and accompanying Order to all counsel of record and to Judge Hoppe.

Entered this  22nd  day of June, 2018.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE